UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| AJ SLOAN, INC., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Case No.: 2:15-cv-02436-GMN-VCF |
| vs. ) | |
| ) | **ORDER** |
| JACQUELINE R. HOLLOWAY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 28), filed by Defendants Jacqueline R. Holloway ("Director Holloway") and Clark County (the "County") (collectively "Defendants"). Plaintiffs AJ Sloan, Inc. ("AJ Sloan"); LGS3, LLC ("LGS3"); LGS4, LLC ("LGS4"); and LGS5, LLC ("LGS5") (collectively "Plaintiffs") filed a Response, (ECF No. 31), and Defendants filed a Reply, (ECF No. 35). For the reasons discussed below, the Court GRANTS Defendants' Motion for Summary Judgment.

I.  **BACKGROUND**

Plaintiffs own gaming and drinking establishments in Clark County, Nevada, that operate as taverns under "Class A" gaming licenses. These licenses "permit[] the operation of a total of fifteen or fewer slot machines *incidental* to the primary business at the establishment wherein the slot machines are to be located." Clark County Code (the "Code") § 8.04.040(b)(3) (emphasis added).

Following a proliferation of businesses operating under Class A licenses, the Clark County Board of County Commissioners (the "Board") passed an amendment to its tavern laws (the "2011 Ordinance") effective April 9, 2011. (*See, e.g.*, Exs. O, P, Q to Mot. for Summary J. ("MSJ"), ECF Nos. 28-1, 28-2); (Holloway Dep. at 34, Ex. E to MSJ, ECF No. 28-1). The

2011 Ordinance required that taverns operating under Class A limited gaming licenses have a bar and at least eight slot machines "embedded" in the bar. (Holloway Dep. at 54); Code § 8.20.020.385 (Apr. 19, 2011). Taverns licensed "at the same location" prior to December 22, 1990, were exempted from the new requirement. Code § 8.20.020.385 (Apr. 19, 2011).

County enforcement staff eventually informed the Board that they were experiencing difficulties in enforcing certain provisions of the 2011 Ordinance. (*See* Ex. X at 29, ECF No. 28-3). In addition, the Board became concerned that certain businesses were exploiting a loophole in the 2011 Ordinance to continue to operate as a "slot parlor" under the guise of tavern.[1] (*See id.* at 34–36). Both concerns related to attempts by some businesses to comply with the "embedded" slot machine requirement by moving free standing "slant top" machines adjacent to a bar. (*See, e.g.*, *id.* at 29). Because of these issues, the Board decided to again amend the Code. (*See* Ex. Z at 92, ECF No. 28-3).

On December 3, 2014, the Board passed Ordinance L-256-14 (the "2014 Ordinance") by a 6-1 vote. (*See* Ex. A to MSJ, ECF No. 28-1). The 2014 Ordinance requires taverns to maintain bars with a minimum height of forty inches and to operate a minimum number of slot machines as "bartop machines."[2] Code § 8.20.020.385(c)(1). Code § 8.20.020.385(c)(2). A tavern need not comply with these provisions if it either operates seven or fewer slot machines or qualifies as a grandfathered tavern. Code § 8.20.020.385(d)–(e). According to the Code, a "grandfathered tavern" is:

> (i) A tavern licensed for fifteen or fewer slot machines, the application for which was pending or approved prior to [December 8, 2006]; or

---

[1] "Slot parlors" differ from taverns in that gaming-based revenue is not incidental to the primary business of a slot parlor. (*See, e.g.*, Holloway Dep. at 47).

[2] A "bartop machine" is a "slot machine or gaming device which is installed into the flat horizontal counter of a 'bar' . . . for which the bar is the cabinetry of the slot machine." Code § 8.20.020.024.

> (ii) Any tavern which, as of December 2, 2014, operated more than fifty percent of the slot machines on its premises as bartop machines, regardless of the height of such bartop machines located in a bar . . . .

Code § 8.20.020.385(a)(i)–(ii).

On December 31, 2014, Director Holloway of the Business License Department sent Plaintiffs a letter that identified exempted locations. (Ex. 2 to Resp., ECF No. 31-2). The letter reflected Director Holloway's interpretation that, like the 2011 Ordinance, exemption under the 2014 Ordinance depended on the date the tavern location first received a gaming license. (*Id.*). Shortly thereafter, Board members informed Director Holloway that her interpretation was inconsistent with the language and intent of the 2014 Ordinance. (*See* Holloway Dep. at 34, 36–40). Director Holloway revised her interpretation and concluded that the application date of "current ownership," rather than tavern location, determined grandfathered status. (*Id.*). On October 28, 2015, and November 2, 2015, Director Holloway sent two additional letters to Plaintiffs clarifying her revision and notifying Plaintiffs that they no longer qualified for grandfathered status under the corrected interpretation. (Exs. C, D to MSJ, ECF Nos. 28-1).

Rather than complying with the 2014 Ordinance, Plaintiffs filed the instant case in state court alleging violations of due process and seeking declaratory and injunctive relief. (Ex. B to Pet. for Removal, ("Compl."), ECF No. 1). Defendants removed the case to this Court and filed the instant Motion for Summary Judgment on Plaintiffs' claims. (*See generally* MSJ, ECF No. 28).

II.     **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that

may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute,

the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. **DISCUSSION**

In the instant Motion, Defendants seek summary judgment on Plaintiffs' claim that the County's interpretation of the 2014 Ordinance violates substantive due process by effecting an unconstitutional taking.[3] (Compl. ¶ 62); (*see also* Resp. 20:21–24, ECF No. 31) ("Plaintiffs here are not challenging the promulgation of the respective ordinances, which gave rise to their grandfathered status.").[4] Defendants argue that Plaintiffs have failed to articulate a cognizable

---

[3] Plaintiffs plead their due process claim under both federal and state law. These rights under the Nevada Constitution are identical to those under federal law. *See McCarran Int'l Airport v. Sisolak*, 137 P.3d 1110, 1119 (Nev. 2006).

[4] Plaintiffs argue that "Commissioner Sisolak, conducted under the auspices of his public position, [committed] ultra-vires acts . . . and directed a public administrator [Director Holloway] to act, in excess of her authority, in a manner which was contrary to the letter of two (2) ordinances, without the advice, consent or authority of either the legislating body, the Liquor and Gaming Licensing Board or the governing body, the Board of Clark County Commissioners and against the prescription of Nevada's open meeting laws." (Resp. 9:4–9). Plaintiffs allege that this activity constituted "a direct violation of Nevada's open meeting laws . . ., as prescribed by NRS 241.036." (*Id.* 9:10–15). The Complaint, however, is devoid of any such allegation, and Plaintiffs cannot now assert this claim in their Response to Defendants' Motion for Summary Judgment.

property interest and, in any event, the County's interpretation of the 2014 Ordinance comports with its plain language.  The Court considers these arguments in turn.

### A.   Due Process

Defendants argue that the "County, under state law, had discretion to impose new conditions on restricted gaming licenses; therefore, it did not take property from Plaintiffs when it amended the [2011 Ordinance]." (MSJ 18:22–19:2).  "To state a substantive due process claim, the plaintiff must show as a threshold matter that a state actor deprived it of a constitutionally protected life, liberty or property interest." *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008).  Constitutionally protected property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

"A reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms." *Wedges/Ledges of Cal., Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994); *see also Town of Castle Rock v. Gonzales*, 545 U.S. 748, 760 (2005) (noting that property interests arise only when the relevant state law provisions "truly ma[k]e [the conferral of the benefit] mandatory").  A regulation granting broad discretion to a decision-maker does not create a property interest. *Jacobson v. Hannifin*, 627 F.2d 177, 180 (9th Cir. 1980).  Here, the Code "declare[s] that the right to obtain [a] license is a privilege and . . . the operation of [a] gambling facility . . . is a privileged business subject to regulations." Code § 8.04.020(a).  Further, the Code confers "general power . . . to impose conditions, limitations and restrictions upon a license" and "broad final discretion in all licensing matters" to the Board. Code § 8.04.020(c).

Plaintiffs' sparse arguments in response are littered with non sequitur.  Plaintiffs do not argue that the County revoked their licenses or rejected their permit applications. (*See* Resp.

18:13–15) ("[T]he Sahara Avenue . . . tavern's gaming and liquor licenses are currently active and in good standing."). Instead, the thrust of Plaintiffs' due process claim is that their "grandfathered rights, respecting th[e] tavern location[s] were legislatively conferred and constituted legally vested interests and property rights upon conferral." (Resp. 29:15–16). Plaintiffs fail to cite any authority on this point or demonstrate a vested right to be insulated from new legislative conditions by virtue of prior ordinances or prior grandfathered status provisions articulated therein. Indeed, "[alcohol and gambling] are subject to 'almost limitless' restriction by the County." *Nev. Rest. Servs., Inc. v. Clark Cty.*, No. 2:11-cv-00795-KJD, 2012 WL 4355549, at *7 (D. Nev. Sept. 21, 2012), *aff'd*, 638 F. App'x 590 (9th Cir. 2016) (dismissing similar due process claim regarding the 2011 Ordinance). As a result, the Court finds that Plaintiffs have failed to demonstrate a protected property interest and therefore finds summary judgment appropriate on this claim. The Court nevertheless considers Plaintiffs' remaining arguments.

      **B.     2014 Ordinance**

Next, Plaintiffs argue that Director Holloway's November 2, 2015 letter determined Plaintiffs' grandfathered status without legal authority and contrary to the plain language of the 2014 Ordinance. (Resp. 5:25–8:24). However, Plaintiffs fail to explain how Director Holloway's revised interpretation of the 2014 Ordinance conflicts with her responsibility to "develop administrative procedures, ordinances, rules, and regulations to effectively and efficiently enforce the licensing provisions of the Clark County Code, . . . licensing laws, [and] ordinances . . . ." Code § 2.03.030(f). Further, the Court finds that the County's interpretation of the 2014 Ordinance is reasonably consistent with its plain language notwithstanding the revision issued by Director Holloway. *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1035 (9th Cir. 2006) (noting that the "pertinence" of a city manager's

administrative instruction authorized by and construing a city ordinance was not affected by repeated amendments).

No state or federal court has interpreted the 2014 Ordinance. The Court therefore looks to Nevada's rules of statutory construction to determine its meaning. *See In re First T.D. & Inv., Inc.*, 253 F.3d 520, 527 (9th Cir. 2001). Under Nevada law, a court should construe a statute to give effect to the legislature's intent. *Richardson Constr., Inc. v. Clark County Sch. Dist.*, 156 P.3d 21, 23 (Nev. 2007). If the statute's plain language is unambiguous, that language controls. *Id.* If the statute's language is ambiguous, the Court "must examine the statute in the context of the entire statutory scheme, reason, and public policy to effect a construction that reflects the Legislature's intent." *Id.*

      **i.**     *Grandfathered Clause (a)(i)*

While the 2011 Ordinance exempted taverns that received a gaming license "prior to December 22, 1990 *existing at the same location*," Code § 8.20.020.385 (Apr. 19, 2011) (emphasis added), the 2014 Ordinance is devoid of any such location-based language. Rather, Grandfathered Clause (a)(i) exempts businesses based on application date, stating:

> [a] tavern licensed for fifteen or fewer slot machines, the *application* for which was pending or approved prior to the effective date of the Nevada Clean Indoor Air Act (Nevada Revised Statutes 202.2483 et seq., effective December 8, 2006)

Code § 8.20.020.385(a)(i) (emphasis added).

As Defendants point out, the Code indicates that "a gaming applicant is a person and [an application] does not permanently attach to a particular location." (MSJ 15:25–26); Code § 8.04.020(a) ("All such *persons* . . . shall be licensed or controlled [and] . . . [t]he burden of proving qualification to receive or retain any license or finding of suitability is on *the applicant*.") (emphasis added). The County's interpretation that grandfathered status under Grandfathered Clause (a)(i) is "dependent upon when the current owner of each tavern was

issued a tavern license, and not when the location of [the] tavern was first issued a tavern license," is therefore supported by the plain language of the ordinance. (*See* Ex. C to MSJ, ECF No. 28-1); *see also Folio v. Briggs*, 656 P.2d 842, 844 (Nev. 1983) (noting that the Nevada Supreme Court "attach[es] substantial weight" to the interpretation of a state agency "clothed with the power to construe the statutes under which it operates"). The Court therefore finds that grandfathered status under this clause accrues when two circumstances are met: (1) the tavern operates fifteen or fewer slot machines; and (2) the tavern's current owner filed a license application prior to December 6, 2008. *See* Code § 8.20.020.385.

Plaintiffs do not argue that they are entitled to grandfathered status under this interpretation. Instead, Plaintiffs assert that the 2014 Ordinance "retained the grandfather [sic] status previously accorded taverns holding Class A gaming licenses, *issued to locations existing prior to December 22, 1990*." (Resp. 24:19–22). In support of this position, Plaintiffs point to language in the 2014 Ordinance which states that:

> *A grandfathered tavern* shall not be required to comply with subsection (c) or (d) below; provided, however, that *a grandfathered tavern licensed after December 22, 1990*, (either Class A or B) shall be required to comply with subsections (c) or (d) below in the event the owner, licensee, operator or transferee fails to operate and maintain the tavern in a manner substantially similar to the manner of operation and physical layout of the tavern as of December 2, 2014, including but not limited to removing the bar or reducing the number of bartop operated on the premises.

Code § 8.20.020.385 (emphasis added). This language plainly applies only after a tavern has met the requirements of (a)(i) or (a)(ii) to qualify as a grandfathered tavern. Far from creating a third avenue to grandfathered status, this language merely creates a dichotomy of grandfathered taverns: those licensed before December 22, 1990, and those licensed after.[5] Moreover, as

---

[5] To be clear, the 2014 Ordinance specifies only two critical dates to determine grandfathered status: December 8, 2006, with regard to Grandfathered Clause (a)(i), and December 2, 2014, with regard to Grandfathered Clause (a)(ii). *See* Code § 8.20.020.385.

discussed *supra*, grandfathered status does not attach to a particular location in perpetuity under the 2014 Ordinance. Because Plaintiffs' current owner did not acquire any license prior to December 8, 2016, Plaintiffs are not entitled to grandfathered status under the plain language of this clause.

                ii.      *Grandfathered Clause (a)(ii)*

By the plain language of Grandfathered Clause (a)(ii), a tavern may also be grandfathered if, as of December 2, 2014, "more than fifty percent (50%) of the slot machines on its premises" were "installed into the flat horizontal counter of a 'bar,'" without regard to height. Code §§ 8.20.020.024, 8.20.020.385(a)(ii). Plaintiffs do not argue that they meet this requirement but rather assert that "AJ Sloan made a good faith attempt to come into compliance with the 2011 [Ordinance]" and therefore acquired grandfathered status under the 2014 Ordinance. (Resp. 17:24–25, 19:3–7). This argument fails to explain how a "good faith attempt" to comply with an earlier ordinance meets the standards of this clause. Indeed, Plaintiffs do not argue that any location "operated more than fifty (50%) of the slot machines on its premises as bartop machines." Code § 8.20.020.385(a)(ii). Plaintiffs are therefore not entitled to grandfathered status under either Grandfathered Clause in the 2014 Ordinance.

Based on the foregoing, the Court GRANTS Defendants' Motion for Summary Judgment and DENIES the remaining motions in this case as moot.

## IV.    <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 28), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Judgment, (ECF No. 13), is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Preliminary Injunction, (ECF No. 14), is **DENIED as moot**.

1   **IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment,
2   (ECF No. 24), is **DENIED as moot**.
3   The Clerk shall close the case and enter judgment accordingly.
4   **DATED** this __16__ day of March, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Judge